636 P.2d 1223

Neil O. **CAPIN**, Plaintiff/Appellee,

v.

**S & H PACKING COMPANY, INC., a corporation, Defendant/Appellant.**

No. 2 CA–CIV 4002.

Court of Appeals of Arizona, Division 2.

Sept. 30, 1981.

Rehearing Denied Nov. 9, 1981.

Review Denied Dec. 1, 1981.

Haythornewhite & Drake by James F. Haythornewhite, Nogales, for plaintiff/appellee.

D'Antonio & D'Antonio, P. C. by Gregory D. D'Antonio, Tucson, for defendant/appellant.

OPINION

HOWARD, Judge.

This was a suit for the balance due on a hauling contract. The trial court awarded plaintiff judgment in the sum of $9,209.85 plus attorney's fees and court costs. Appellant contends the trial court erred in not dismissing the action because plaintiff's assignee, Transportadora Del Valle (TDV), a Mexican corporation, did not qualify to do business in Arizona until after this action was commenced. Appellant further contends the judgment was against the weight of the evidence and that the trial court's application of the doctrine of estoppel was erroneous. We disagree and affirm.

The evidence, considered in the light most favorable to upholding the judgment of the trial court, shows that TDV entered into a contract with S & H Packing Company (S & H) to haul produce from Mr. Espinoza's farm in Mexico to Nogales, Arizona, during the 1978 through 1979 growing season. While they agreed that S & H would pay TDV $750 for each truck load delivered to S & H in Nogales, nothing was said about those loads which U.S. Customs rejected and which had to be returned to Espinoza. S & H had dealt with TDV in the past and had never been billed for returning rejected shipments. The custom and usage in the business was not to charge for rejected loads. However, commencing with the 1978–1979 growing season, TDV charged all of its customers for returning these loads. During the course of the growing season several truckloads were rejected by Customs agents and were returned to Espinoza.

TDV billed S & H for the cost of returning this produce and S & H paid the bills.

■ At the conclusion of the growing season, the president of S & H first became aware that TDV had charged S & H for returning the rejected loads. He deducted these charges from TDV's final $9,209.85 invoice and sent TDV a check for $640.56. TDV did not cash the check and this action followed.

## QUALIFYING TO DO BUSINESS AFTER INSTITUTION OF ACTION

A.R.S. § 10–124(A) and (B) provides: "A. No foreign corporation transacting business in this state without authority shall be permitted *to maintain* any action, suit or proceeding in any court of this state, until such corporation shall have been authorized to transact business. Nor shall any action, suit or proceeding *be maintained* in any court of this state by any successor or assignee of such corporation on any right, claim or demand arising out of the transaction of business by such corporation in this state, until authority to transact business has been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets.

B. The failure of a corporation to obtain authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state." (Emphasis added)

The above statute does not state that the foreign corporation cannot institute or commence an action prior to compliance, but merely states that it cannot maintain an action until it complies. The word "maintained" implies the continuance of something that has already been commenced. Had the Legislature meant that no action could be instituted prior to compliance, it could have easily said so. It is generally held under a statute such as ours that compliance after the action has been commenced is sufficient to enable the corpora-tion to maintain the action. See *Inn Operations, Inc. v. River Hills Motor Inn Company*, 261 Iowa 72, 152 N.W.2d 808 (1967); *Menley & James Laboratories, Ltd. v. Vornado, Inc.*, 90 N.J.Super. 404, 217 A.2d 889 (1966); *Tiffany Agency of Modeling, Inc. v. Butler*, 110 R.I. 568, 295 A.2d 47 (1972); and see Annot., 6 A.L.R.3d 326, § 4(b). We hold that under A.R.S. § 10–124(A) compliance after the action has been commenced is sufficient to enable the foreign corporation to maintain the action.

## ESTOPPEL

■ It was appellant's position that it had paid the returned freight billings to TDV by mistake and was therefore entitled to credit these sums against TDV's final bill. The trial court found that appellant was estopped from claiming credit because TDV received the payments in good faith and changed its position to its prejudice and reliance on the initial payments for the returned hauling since it continued to haul the rejected merchandise to Espinoza which it would not have done had appellant objected or refused to pay at the outset. Appellant claims this was a misapplication of the doctrine of estoppel. We do not agree. The general rule is well stated in *Jonklaas v. Silverman*, 117 R.I. 691, 370 A.2d 1277 (1977):

"It is a firmly established general rule that money paid to another under the influence of a mistake in fact may be recovered, *provided* the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. 66 Am.Jur.2d *Restitution and Implied Contracts* §§ 119, 135 (1973). In order that there may be such a change of position as will defeat an action to recover the money paid by mistake, the change must be detrimental to the payee, material and irrevocable. 66 Am.Jur.2d, *supra*, § 136; 40 A.L.R.2d 997, 1001. *See* Restatement *Restitution* § 142 (1937)." (Emphasis in original)

The trial court did not err in applying the above rule to the facts here. Cf., *Doyle v. Matheron*, 148 Cal.App.2d 521, 306 P.2d 913

(1957).  The evidence supports the trial court's conclusion.

Affirmed.

THOMAS MEEHAN, Superior Court Judge, and BIRDSALL, J., concur.

NOTE: Chief Judge JAMES D. HATHAWAY having recused himself from consideration of this matter, Judge THOMAS MEEHAN was called to sit in his stead and participate in the determination of of this appeal.