NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PORTHOS CAPITAL LLC, *Plaintiff/Appellee,*

*v.*

JAMES P. PULITO, *Defendant/Appellant.*

No. 1 CA-CV 17-0275
FILED 6-21-2018

Appeal from the Superior Court in Maricopa County
No. CV2015-096539
The Honorable David M. Talamante, Judge

**AFFIRMED AS MODIFIED IN PART, VACATED IN PART,
AND REMANDED**

COUNSEL

James P. Pulito, Scottsdale
*Defendant/Appellant*

Kessler Law Offices, Mesa
By Eric W. Kessler
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**C A T T A N I**, Judge:

¶1 James P. Pulito appeals the superior court's order requiring him to pay Porthos Capital LLC's costs and attorney's fees incurred in bringing a tax lien foreclosure action against Pulito's real property. Pulito argues that Porthos is not entitled to costs or fees for several reasons, including that it was engaged in self-representation and that it does not have a genuine obligation to pay its attorney. For reasons that follow, we affirm the superior court's grant of summary judgment for Porthos, affirm a reduced award of costs in the amount of $620.33 (reduced by $35.00), vacate the court's award of attorney's fees, and remand for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL BACKGROUND

¶2 In December 2015, Porthos instituted a tax lien foreclosure action against a plot of real property owned by Pulito. At the time it filed the complaint, Porthos was a registered LLC in Wyoming—with its principal and mailing address in Mesa, Arizona—but was not registered in Arizona. The complaint alleged that Porthos was entitled to the real property, but noted that Pulito still had a statutory right to redeem the property before judgment was entered on the foreclosure and that, if he did redeem, he had a statutory obligation to pay Porthos's costs and attorney's fees. Several months later, before Porthos obtained a default judgment, Pulito answered the complaint and provided notification that he had redeemed the property by paying all of his delinquent property taxes.

¶3 Porthos filed an application for costs and attorney's fees under Arizona Revised Statutes ("A.R.S.") § 42-18206, which provides that the redeeming party in a tax lien foreclosure action must pay the costs and fees incurred by the plaintiff in bringing the action. Pulito filed an opposition to the application, requesting an evidentiary hearing, noting that Porthos was not a registered LLC in Arizona, and alleging that the attorneys representing Porthos also wholly owned the company and that

the company was not obligated to pay the attorney's fees. Thus, Pulito asserted, Porthos was not entitled to fees.

¶4 Before Porthos responded to Pulito's opposition with a motion for summary judgment, it registered as an LLC in Arizona, listing three managers, two of whom were attorneys with the law firm representing Porthos, and a third person who had the same address as the law firm and who Pulito alleged was also an attorney with the firm.

¶5 After considering several additional pleadings relating to whether Porthos was entitled to costs and fees, the court granted Porthos's motion for summary judgment and denied Pulito's cross-motion. Porthos's attorney filed an affidavit of attorney's fees and costs, in which he included an invoice and affirmed that he was the attorney of record for Porthos and that, with regard to fees, "counsel's normal hourly rate for contested real estate litigation matters for Plaintiff is $395.00." The court held oral argument on the amount of costs and fees, and awarded Porthos $655.33 in costs and $4,883.50 in attorney's fees. Pulito timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(5)(a).

## DISCUSSION

### I. Porthos's Registration in Arizona.

¶6 Relying on A.R.S. § 29-809(A), which prohibits an out-of-state LLC from maintaining an action in an Arizona court until it has registered with the Arizona Corporation Commission ("ACC"), Pulito argues that Porthos should have been precluded from asserting a claim for costs and fees because Porthos did not register with the ACC until after Pulito had already redeemed his property. However, in *Capin v. S & H Packing Co.*, 130 Ariz. 441, 442 (App. 1981), we rejected a similar argument raised regarding an analogous statute addressing corporations. We noted that the statute did not prohibit a foreign company from commencing an action before compliance, but only from *maintaining* the action until it complied. *Id.* We thus held that "compliance [with the statute] after the action has been commenced is sufficient to enable the foreign corporation to maintain the action." *Id.*

¶7 Here, Porthos registered with the ACC after it filed its complaint and after Pulito redeemed the property but before it moved for summary judgment and before the court issued any ruling on costs or fees. Applying the reasoning in *Capin*, we hold that Porthos timely cured any defect by registering as an LLC with the ACC, and was thus not barred from

maintaining the action. Accordingly, the superior court did not err by permitting Porthos to move forward with the action.

## II. Summary Judgment for Porthos and the Prerequisites to Recovering Attorney's Fees.

**¶8**        Pulito argues that Porthos is wholly owned by the law firm that represents it, and that because there was no attorney–client relationship or genuine obligation to pay fees, the superior court erred by granting summary judgment for Porthos and awarding it attorney's fees. We review the superior court's grant of summary judgment de novo, viewing the facts in the light most favorable to the party against whom judgment was entered. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). We review the court's award of attorney's fees for an abuse of discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004).

**¶9**        Summary judgment is proper if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). Here, Porthos made a prima facie showing that it was entitled to judgment under A.R.S. § 42-18206 as a matter of law—it showed that it held the tax lien on Pulito's property and that Pulito redeemed the property before judgment was entered. Pulito did not contest those facts. The court therefore correctly found that Porthos was entitled to the costs and reasonable attorney's fees that it incurred in bringing the action.

**¶10**        To receive attorney's fees, however, Porthos must have actually incurred fees. *See* A.R.S. § 42-18206 ("[J]udgment shall be entered in favor of the plaintiff against the person for the costs *incurred* by the plaintiff, including reasonable attorney fees to be determined by the court.") (emphasis added); *see also Lisa v. Strom*, 183 Ariz. 415, 420 (App. 1995) ("Attorney's fees are meant to make a party whole for costs incurred for an attorney's services."). A party does not incur—and therefore may not receive—attorney's fees unless it fulfills two fundamental common law prerequisites: there is an attorney–client relationship and the client has a genuine obligation to pay its attorney. *See Lisa*, 183 Ariz. at 419.

**¶11**        Pulito first contends that Porthos was not entitled to fees because it was engaged in self-representation. A party engages in self-representation when acting *only* for himself or itself. *Compare Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 363 (App. 1987) (holding that the attorney could recover fees when he represented a partnership in which he owned a

majority interest because he was acting for the benefit of others, as well as himself), *with Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC*, 235 Ariz. 125, 127–28, ¶¶ 7, 13 (App. 2014) (holding that a law firm that represents itself cannot recover attorney's fees).

¶12 Here, Porthos presented sufficient evidence to establish that there was an attorney–client relationship—the law firm and Porthos were separate entities and the attorney's affidavit stated that he represented Porthos. To contradict this, Pulito showed that Porthos had the same principal and mailing address as the law firm representing it. He also showed that the three managers listed on Porthos's ACC information page included Porthos's attorney in this matter, another attorney from the same firm, and a third person who Pulito claims is also an attorney with the firm. But a manager of an LLC does not necessarily have an ownership interest in that LLC, *see* A.R.S. § 29-681(B), and an LLC is not required to list its interest-holding members in the document it provides to the ACC. A.R.S. §§ 29-631(A), -632(A)(6). Thus, by offering only the ACC information page, Pulito did not establish, even assuming the three referenced managers are the only attorneys at the firm and they have ownership in Porthos, that they are the *only* owners of Porthos. *See Hunt*, 154 Ariz. at 363. Pulito's argument thus fails.

¶13 Pulito also contends that Porthos failed to show that it fulfilled the second prerequisite to recovering fees—that it had a genuine obligation to pay its attorney. *See Lisa*, 183 Ariz. at 419 (holding there is no genuine obligation when a husband represents his marital community even though he is acting for himself and his wife). Here, Porthos's attorney's affidavit states that he has "rendered the legal services in the manner and on the dates set forth in [the invoice]," and that "counsel's normal hourly rate for contested real estate litigation matters for [Porthos] is $395.00." But, even when read in conjunction with the invoice, which states the amounts due to the firm, the affidavit does not plainly assert or allow the court to easily infer that Porthos actually agreed to pay the attorney's "normal hourly rate." Although the superior court states in its minute entry that "as a matter of law, Porthos is required to be represented," it does not explicitly find that the affidavit affirms any obligation to pay fees.

¶14 We therefore hold that the superior court abused its discretion by awarding Porthos attorney's fees because Porthos had not demonstrated an actual obligation to pay its attorney. Because Pulito did not expressly argue this technical shortcoming in the superior court, however, we vacate the award and remand to the superior court to allow Porthos to prove its genuine obligation—assuming it has one—to pay attorney's fees.

### III.    Award of Taxable Costs to Porthos.

**¶15**        Pulito next argues the court erred in its award to Porthos by including a $35.00 cost for a title report.  Only taxable costs specifically identified in A.R.S. § 12-332(A), including "certified copies of papers or records," may be awarded in tax lien foreclosures.  A.R.S. §§ 12-332, -333; *Hunt*, 154 Ariz. at 361.  Whether an expenditure qualifies as a taxable cost is a question of law that we review de novo.  *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 608, ¶ 6 (App. 2014).

**¶16**        Here, Porthos requested $668.29 in costs, listing four line-items, including $12.96 for certified mail and $35.00 for a title report.  The court awarded Porthos $655.33 in costs, which is $12.96 less than the requested amount.  We infer, as Pulito suggests, that the court struck the cost for certified mail as a non-taxable cost under § 12-332(A), but considered the other three items to be taxable costs.

**¶17**        Neither party provides authority for why the title report should or should not be considered a taxable cost.  The title report's closest fit under the statute appears to be as a "cost of certified copies of papers or records," A.R.S. § 12-332(A)(4), but because that provision only "refers to records of a public office for which a specific charge is made by the officer certifying to their correctness," *Fowler v. Great Am. Ins. Co.*, 124 Ariz. 111, 114 (App. 1979), the title report ultimately does not fit within the statute.  The superior court therefore erred by including the title report cost in its award to Porthos, and we reduce the award by $35.00, from $655.33 to $620.33.

### IV.    Pulito's Request for an Evidentiary Hearing and Oral Argument.

**¶18**        Finally, Pulito argues that the superior court should have granted his two requests for an evidentiary hearing on his claim that Porthos was engaged in self-representation. We review the superior court's denial of a request for an evidentiary hearing for abuse of discretion. *Gullett ex rel. Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 241 Ariz. 532, 540, ¶ 26 (App. 2017).   To support his argument, Pulito makes unsupported accusations regarding the opposing attorney's conduct, and fails to explain how those accusations establish any abuse of discretion by the court. Because the record instead reveals that Pulito did not take advantage of the tools of discovery, the superior court did not abuse its discretion by denying him a hearing to discover otherwise easily attainable evidence.

**¶19**        Pulito also argues that the court erred by not granting his request for oral argument.  But Pulito waived this argument because he

raised it for the first time in his appellate reply brief. *See Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 502–03 (App. 1992); *see also* ARCAP 13(c). Even considering its merits, Pulito's argument does not warrant relief. Assuming Pulito timely requested oral argument, the superior court was required to set argument, *see* Ariz. R. Civ. P. 56(c)(1), but Pulito has not established any prejudice resulting from the court's technical error in failing to hold oral argument. *See* Ariz. Const. art. 6, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."). Accordingly, the court did not commit reversible error.

**CONCLUSION**

**¶20** For the foregoing reasons, we affirm the superior court's grant of summary judgment for Porthos, we affirm its award of costs as modified to reflect a reduction from $655.33 to $620.33, and we vacate its award of attorney's fees and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA